**DETROIT FREE PRESS, INC.,**
**Plaintiff–Appellee,**

v.

**DEPARTMENT OF JUSTICE,**
**Defendant–Appellant.**

**Nos. 94–1540, 94–1720.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1994.

Decided Jan. 12, 1996.

Herschel P. Fink (argued and briefed), Michael A. Gruskin, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Detroit Free Press, Inc.

Jane E. Kirtley (briefed), Reporter's Committee for Freedom of the Press, Washington, DC, for Reporter's Committee for Freedom of the Press.

Leonard Schaitman, U.S. Department of Justice, Appellate Staff, Civil Division, Washington, DC, L. Michael Wicks, Asst. U.S. Attorney, Office of the U.S. Attorney, Detroit, MI, John F. Daly (argued and briefed), U.S. Department of Justice, Appellate Staff, Civil Division, Washington, DC, for Department of Justice.

Before: JONES, NORRIS, and DAUGHTREY, Circuit Judges.

DAUGHTREY, J., delivered the opinion of the court, in which JONES, J., joined. NORRIS, J. (pp. 99–100), delivered a separate dissenting opinion.

DAUGHTREY, Circuit Judge.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, the Detroit Free Press sought the release of mug shots of eight named individuals who were then under indictment and awaiting trial on federal charges. The United States Marshals Service of the Department of Justice denied the request, however, on the ground that release of the photographs to the newspaper would invade the personal privacy interests of the criminal defendants. The Free Press then filed suit in federal district court pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B) to compel production of the mug shots. The district court granted the newspaper summary judgment and an award of attorneys' fees, after concluding that the information related by dissemination of the photographs did not involve a private matter. We now affirm the judgment of the district court to the extent that the FOIA request by the Free Press concerns ongoing criminal proceedings in which the names of the indicted suspects have already been made public and in which the arrestees have already made court appearances. We also affirm the district court's award of attorneys' fees to the newspaper.

## I.

"A district court reviews *de novo* an agency's decisions regarding a FOIA request. 5 U.S.C. § 552(a)(4)(B)." *Jones v. F.B.I.,* 41 F.3d 238, 242 (6th Cir.1994). Furthermore, in analyzing the propriety of the district court's grant of summary judgment in a FOIA proceeding, we also utilize a *de novo* standard of review. *Id.*

## II.

By enacting the FOIA, Congress evidenced "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Thus, "disclosure, not secrecy, is the dominant objective of the Act," and any exemptions to that disclosure requirement "must be narrowly construed." *Id.* at 361, 96 S.Ct. at 1599.

In rejecting the FOIA request of the Free Press for the mug shots at issue in this litigation, the Department of Justice appropriately focused upon the two statutory exemptions from disclosure contained in 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). Pursuant to these subsections, the general FOIA disclosure requirement does not extend to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," § 552(b)(6), or to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy," § 552(b)(7)(C).

■ In *United States Dep't of Defense v. Federal Labor Relations Auth.,* —— U.S. ——, —— n. 6, 114 S.Ct. 1006, 1013 n. 6, 127 L.Ed.2d 325 (1994), the Supreme Court recognized that "[e]xemption 7(C) is more protective of privacy than Exemption 6: the former provision applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted.'" Thus, if information is not protected from FOIA disclosure under the privacy provisions of § 552(b)(7)(C), that same information would also be subject to dissemination upon request under the less sweeping exemption of § 552(b)(6). We focus our initial inquiry, therefore, upon the provisions of 5 U.S.C. § 552(b)(7)(C).

### III.

To be exempt from disclosure under the privacy provision of § (b)(7)(C), information must first be "compiled for law enforcement purposes." Second, the release of the information by the federal agency must *reasonably* be expected to constitute an invasion of personal privacy. Finally, that intrusion into private matters must be deemed "unwarranted" after balancing the need for protection of private information against the benefit to be obtained by disclosure of information concerning the workings of components of our federal government.

### A. Compilation of Information for Law Enforcement Purposes

■ Despite the Free Press's protestations to the contrary, the mug shots of the federal indictees at issue in this controversy were "compiled for law enforcement purposes." In *Jones v. F.B.I.,* 41 F.3d at 245–46, we recently endorsed a *per se* rule "under which records compiled *by* a law enforcement agency qualify as 'records compiled *for* law enforcement purposes' under FOIA." (Emphasis in original.) The threshold requirement for exemption from disclosure of information under § 552(b)(7) is, therefore, met by the mug shots created by the United States Marshals Service in its law enforcement capacity.

### B. Reasonable Categorization of Disclosure as Invasion of Personal Privacy

The Department of Justice also contends that the range of privacy interests protected by the exemptions from FOIA disclosure is "expansive" and that even the disclosure of the mug shots of individuals already arrested, indicted, and awaiting federal trial could reasonably be considered an invasion of personal privacy. In support of its position, the Department of Justice cites Supreme Court cases ruling that certain information in the possession of federal agencies cannot be released to the public without infringing unnecessarily upon personal privacy interests. The highlighted decisions, however, actually emphasize the *public* nature of the information sought in this case and distinguish this matter from the factual situations presented in those earlier disputes.

For example, in *United States Dep't of Defense v. Federal Labor Relations Auth.,* the Court refused to order dissemination of the home addresses of federal agency employees, despite the fact that many of those addresses could also be obtained from readily-available, public telephone directories. —— U.S. at ——, 114 S.Ct. at 1016. Release of home addresses, however, would shed no light on the workings of the government and, as the Court has recognized, the "crystal clear" objective of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose,* 425 U.S. at 361, 96 S.Ct. at 1599. In contrast, the release of mug shots of individuals under indictment in federal court does not in this instance disclose personal information unrelated to the daily work of the Marshals Service. Rather, such disclosure provides documentary evidence of the designated responsibilities of an agency of the federal government and thus provides a factual scenario distinguishable from the controversy in *Federal Labor Relations Auth..*

Similarly, the Department of Justice's citation to *United States Dep't of State v. Ray,* 502 U.S. 164, 112 S.Ct. 541, 116

L.Ed.2d 526 (1991), does not mandate a conclusion that the mug shots in this case should be exempted from disclosure to the media. In *Ray,* the Court ruled only that illegal Haitian immigrants had a statutory privacy interest in preventing the *initial* release of their names to the public, although the State Department had already published the fact that unnamed individuals had been interviewed by the agency. Likewise, had the Marshals Service in this case sought to withhold only names of targets of investigations whose identities had not previously been released, the result requested now by the Department of Justice might well have been required. The factual situation presented in this case is, however, markedly different from that which prompted the *Ray* decision. Unlike the immigrants in *Ray,* the indictees in this matter had already been identified by name by the federal government and their visages had already been revealed during prior judicial appearances. No *new* information that the indictees would not wish to divulge would, therefore, be publicized by release of the mug shots by the Marshals Service.

Furthermore, the Supreme Court's ruling in *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), is not dispositive of the dispute presented in this appeal. While *Reporters Committee* also involved the requested release of information relating to criminal prosecutions, the dispute in that litigation concerned the F.B.I.'s refusal to release "rap sheets" of certain government contractors. The rap sheets, however, were not germane to any active prosecution of the contractors. More importantly, as noted by the Court, the very nature of rap sheets demands that they be accorded a greater degree of privacy and protection from public scrutiny. Such documents are not single pieces of information but, rather, compilations of many facts that may not otherwise be readily available from a single source. Thus, rap sheets both disclose information that extends beyond a particular, ongoing proceeding and recreate information that, under other circumstances, may have been lost or forgotten.

Nevertheless, the Department of Justice intimates that rap sheets and mug shots cannot be meaningfully distinguished for FOIA privacy purposes, in part because, like rap sheets, a mug shot "conveys an extremely unflattering view of the subject, with strong connotations of guilt." We have previously determined, however, that the personal privacy of an individual is not necessarily invaded simply because that person suffers ridicule or embarrassment from the disclosure of information in the possession of government agencies. *Schell v. United States Dep't of Health and Human Servs.,* 843 F.2d 933, 938–39 (6th Cir.1988) (resolving a challenge to nondisclosure of information under 5 U.S.C. § 552(b)(6)). Furthermore, the need or desire to suppress the fact that the individual depicted in a mug shot has been booked on criminal charges is drastically lessened in an ongoing criminal proceeding such as the one precipitating the dispute presently before us.

We need not decide today whether the release of a mug shot by a government agency would constitute an invasion of privacy in situations involving dismissed charges, acquittals, or completed criminal proceedings. Instead, we need resolve only the single issue of whether such disclosure in an ongoing criminal proceeding, in which the names of the defendants have already been divulged and in which the defendants themselves have already appeared in open court, "could reasonably be expected to constitute an ... invasion of personal privacy." Under these detailed circumstances, we believe that no privacy rights are implicated.

## C. Unwarranted Nature of Any Invasion of Personal Privacy

Upon concluding that release of mug shots of the federally indicted defendants in this dispute could not reasonably be expected to constitute an invasion of personal privacy, there is, of course, no need then to determine whether such an invasion would be *warranted.* Even had an encroachment upon personal privacy been found, however, a significant public interest in the disclosure of the mug shots of the individuals awaiting trial *could,*

nevertheless, justify the release of that information to the public.

■ The primary purpose of the FOIA "is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Reporters Comm.*, 489 U.S. at 774, 109 S.Ct. at 1482 (emphasis in original). Public disclosure of mug shots in limited circumstances can, however, serve to subject the government to public oversight. For example, release of a photograph of a defendant can more clearly reveal the government's glaring error in detaining the wrong person for an offense than can any reprint of only the name of an arrestee. Furthermore, mug shots can startlingly reveal the circumstances surrounding an arrest and initial incarceration of an individual in a way that written information cannot. Had the now-famous videotape of the Rodney King beating in Los Angeles never been made, a mug shot of Mr. King released to the media would have alerted the world that the arrestee had been subjected to much more than a routine traffic stop and that the actions and practices of the arresting officers should be scrutinized.

Although additional examples of the public benefits to be derived from the disclosure of mug shots in limited circumstances could be detailed, we reiterate that such an exercise need not be undertaken in this case. Given the fact that the present FOIA request involved only mug shots of individuals who were already indicted, who had already made court appearances after their arrests, and whose names had already been made public in connection with an ongoing criminal prosecution, we conclude that disclosure of the requested information could not reasonably be expected to constitute an unwarranted invasion of personal privacy.

## IV.

The Department of Justice also insists in this appeal that the district court erred in awarding the Free Press its reasonable attorneys' fees for the FOIA litigation. Such fees may, however, be awarded in any FOIA case "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

■ In determining whether a prevailing FOIA complainant should be awarded attorneys' fees, a district court should consider at least the following factors: "the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law." *American Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1111 (6th Cir.1985). We review the court's determination on this issue for an abuse of discretion. *Id.*

■ In this matter, the district court did consider the appropriate factors in concluding that an award of attorneys' fees to the Free Press would be proper should the underlying FOIA decision be upheld on appeal. The court first noted that "[t]he action of the newspaper here was of benefit to the public. It gives further insight into the criminal justice administration conducted in this district. It gives further impetus to people who might come forward with evidence in criminal prosecutions." *See also Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C.Cir.1977) ("[u]nder the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication....").

Second, although recognizing that the newspaper would reap some commercial benefit from its access to the mug shots, the district court also expressed its understanding that "news interests should not be considered commercial interests." *Fenster v. Brown*, 617 F.2d 740, 742 n. 4 (D.C.Cir.1979) (examining the FOIA's legislative history). Where "the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented," fees are generally awarded. *Id.* Thus, this factor also weighs in favor of the Free Press on the attorneys' fee issue.

The final factor, however, weighs in favor of a decision *not* to award such fees. Both parties to the dispute recognize that the issue before the court is one of first impression and that the position espoused by the De-

partment of Justice is reasonable. Thus, the district court, in balancing the factors of the *American Commercial Barge Lines Co.* test, stated that those factors "are such as might be weighed differently by different people." After examining the facts presented by this case, however, the court concluded that the requested fees should be awarded to the Free Press. On appeal, we cannot say that the district judge abused her discretion in so deciding.

## V.

The judgment of the district court regarding the FOIA complaint of the Free Press is AFFIRMED to the extent that the request for documents concerns ongoing criminal proceedings in which the names of the indicted suspects have already been made public and in which the defendants have already appeared publicly in court. Because we also conclude that the district court did not abuse its discretion in awarding reasonable attorneys' fees to the successful complainant in this FOIA action, the judgment of the court concerning that award is also AFFIRMED.

ALAN E. NORRIS, Circuit Judge, dissenting.

Because the disclosure of the requested mug shots could reasonably be expected to create an unwarranted invasion of the personal privacy of the subjects of those photographs, I respectfully dissent.

The FOIA privacy exemptions recognize an individual's interest in preventing the disclosure of personal matters. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989). Protected interests "encompass the individual's control of information concerning his or her person." *Id.* at 763, 109 S.Ct. at 1476; *see also Jones v. F.B.I.*, 41 F.3d 238, 247 (6th Cir.1994). As the Second Circuit has put it, "Congress intended to afford broad protection against the release of information about individual citizens." *Hopkins v. United States Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 86–87 (2nd Cir.1991).

The majority attempts to lessen the impact of the Supreme Court's privacy exemption cases by observing that the subjects of the mug shots "had already been identified by name by the federal government and their visages had already been revealed during prior judicial appearances." However, the Court rejected a very similar argument in *Reporters Committee.* Although the information contained in the requested rap sheets was a matter of public record, the Court found that reliance upon the fact that the information had been previously disseminated reflected a "cramped notion of personal privacy." *Reporters Comm.*, 489 U.S. at 763, 109 S.Ct. at 1476.

The Marshals Service mug shots at issue give distinctive form to information about a person. The fact that a matter "is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Reporters Comm.*, 489 U.S. at 770, 109 S.Ct. at 1480 (citation omitted). The majority's view that one's mug shot conveys no more than one's appearance misconceives the true nature of a mug shot. While a photograph may not reveal any "private" information, a mug shot conveys much more than the appearance of the pictured individual. Unlike a photograph taken under normal circumstances, it relates a number of facts about a person, including his expression at a humiliating moment and the fact that he has been booked on criminal charges. Furthermore, as this court has recognized, mug shots are widely viewed by members of the public as signifying that the person in the photo has committed a crime. *Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir.1979) (mug shots convey an "unmistakable badge of criminality"). In my view, these considerations lead to but one conclusion: that the subject of a mug shot has a cognizable privacy interest in preventing its public dissemination.

We must next inquire whether this privacy concern is outweighed by a significant public interest. The majority argues that the disclosure of mug shots would improve the functioning of the criminal justice system, helping to ensure, for instance, that the proper person has been detained. However, the record contains no evidence of abuse in the Marshals Service's arrest and detention prac-

tices. Especially in view of the presumption of legitimacy that we accord to agency conduct, this asserted interest is utterly speculative and therefore not entitled to weight in the FOIA privacy exemption balancing. *United States Dep't of State v. Ray,* 502 U.S. 164, 179, 112 S.Ct. 541, 549–50, 116 L.Ed.2d 526 (1991). Absent some evidence of misconduct by the Marshals Service, we will not weigh in the balance a desire to monitor that agency. *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526, 530 (6th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984).

In short, I believe that the disclosure of these mug shots would serve no public interest cognizable under the FOIA. As a general rule,

> [w]hen the subject of [an agency record] is a private citizen and when the information [is not] a record of "what the Government is up to," the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir.

*Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. at 1485. This observation applies with full force to the facts before us. The disclosure of the requested photographs would serve no cognizable purpose, yet would significantly infringe upon the personal privacy of the subjects of the photographs.

Accordingly, I respectfully dissent.