*929 Concurring opinion filed by Circuit Judge TATEL.
Dissenting opinion filed by Circuit Judge BROWN.
TATEL, Circuit Judge:
Three years ago, in American Civil Lierties Union v. U.S. Department of Justice, 655 F.3d 1 (D.C.Cir.2011) (ACLU I), this court held that the Freedom of Information Act required the Justice Department to disclose case names and docket numbers for prosecutions in which the government had obtained cellular phone tracking data without a warrant and the defendant had ultimately been convicted. The court left open the question whether the Department would also have to disclose docket information for similar prosecutions in which the defendant had been acquitted or had the charges dismissed. Now squarely facing just that question, we conclude that given the substantial privacy interest individuals have in controlling information concerning criminal charges for which they were not convicted, the Department has properly withheld this information.
I.
In order to “open agency action to the light of public scrutiny,” Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (internal quotation marks omitted), FOIA requires federal agencies, “upon request, to make ‘promptly available to any person’ any ‘records’ so long as the request ‘reasonably describes such records,’ ” Assassination Archives & Research Center v. CIA 334 F.3d 55, 57 (D.C.Cir.2003) (quoting 5 U.S.C. § 552(a)(3)). This broad statutory mandate is subject to certain enumerated exemptions. See 5 U.S.C. § 552(b)(l)-(9). At issue here is FOIA Exemption 7(C), which provides that an agency may withhold “records or information compiled for law enforcement purposes” if disclosure “could reasonably be expected to constitute an unwarranted invasion of personal privacy.” Id. § 552(b)(7). Determining whether an invasion of privacy is “unwarranted” within the meaning of Exemption 7(C) requires, as the Supreme Court held in U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), “balancing] the public interest in disclosure against the interest [in privacy] Congress intended the Exemption to protect.”
In Reporters Committee, the Supreme Court considered the applicability of Exemption 7(C) to a request for an alleged mob figure’s “rap sheet” — a document compiled by the FBI that “contain[ed] certain descriptive information, such as date of birth and physical characteristics, as well as a history of arrests, charges, convictions, and incarcerations.” Id. at 752, 109 S.Ct. 1468. Holding that the disclosure of such rap sheets implicates a substantial privacy interest, id. at 771, 109 S.Ct. 1468, the Court rejected the contention that any interest in avoiding disclosure “approaches zero” simply because “events summarized in a rap sheet have been previously disclosed to the public,” id. at 762-63, 109 S.Ct. 1468. The Court explained that an individual’s interest in privacy “encompass[es] the individual’s control of information concerning his or her person,” id. at 763, 109 S.Ct. 1468, even though “the information may have been at one time public,” id. at 767, 109 S.Ct. 1468. Disclosure of a rap sheet, the Court found, was particularly troubling because it would in one fell swoop bring to light many facts about a person that might otherwise be subject to little public scrutiny. See id. at 769-71, 109 S.Ct. 1468; see also id. at 764, 109 S.Ct. 1468 (emphasizing the “distinction, in terms of personal privacy, between scattered disclosure of the bits *930 of information contained in a rap sheet and revelation of the rap sheet as a whole”). On the other side of the balance, the Court found the public interest in disclosure to be fairly limited because a rap sheet would reveal little about “the Government’s activities.” Id. at 754, 109 S.Ct. 1468. Thus, the Court held “as a categorical matter” that granting a “third party’s request for law enforcement records or information about a private citizen” that “seeks no ‘official information’ about a Government agency” would constitute an “ ‘unwarranted’ ” invasion of privacy. Id. at 780, 109 S.Ct. 1468.
The case now before us arose after the American Civil Liberties Union learned that federal law enforcement agencies were, without first securing a warrant, obtaining data from cellular phone companies that could be used to track phone users’ whereabouts. The ACLU filed FOIA requests with the Drug Enforcement Administration and the Executive Office for United States Attorneys, seeking, among other things, records related to: “The case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data.” To compel production of these records,, the ACLU then sued the Department of Justice.
In response, the Department identified a large number of prosecutions — the total count is currently 229 — in which a judge had, since September 2001, granted the government’s application to obtain cell phone location data without making a probable cause determination. The Department refused to turn this list of cases over to the ACLU, claiming that the information fell within FOIA Exemption 7(C).
The parties each moved for summary judgment. The district court, then Judge Robertson, concluded that each of the individuals who had been prosecuted in these cases had a privacy interest in preventing disclosure of the requested information. The court went on to draw a distinction that neither party had directly advanced, according “a greater privacy interest to persons who were acquitted, or whose cases were dismissed or sealed (and remain under seal), and a considerably lesser privacy interest to persons who were convicted, or who entered public guilty pleas.” American Civil Liberties Union v. U.S. Department of Justice, 698 F.Supp.2d 163, 166 (D.D.C.2010). Determining that “the public has a substantial interest in the subject of cell phone tracking” that would be advanced by the requested disclosure, the court held that “the public interest in ‘what the government is up to’ outweighs the privacy interests of persons who have been convicted of crimes or have entered public guilty pleas; but ... the privacy interests of persons who have been acquitted, or whose cases have been sealed and remain under seal, or whose charges have been dismissed, outweigh the public interest in disclosure of their names and case numbers.” Id. The district court therefore directed the Department to disclose the requested information regarding prosecutions in which the government had secured a conviction but permitted it to withhold the information regarding the remaining cases.
Both sides appealed, and this court affirmed in part. We began our analysis by noting that, although the ACLU sought only the case name, court, and docket number of these prosecutions, courts “evaluating the privacy impact of the release of information ... have taken into consideration potential derivative uses of that information.” ACLU I, 655 F.3d at 7. The derivative uses to be made with the requested docket information were fairly substantial: with “little work,” someone could “look up the underlying case files in *931 the public records of the courts,” id., and could even attempt to contact the defendants, or their attorneys, directly, id. at 11-12. Nevertheless, we concluded that, with respect to those defendants who had ultimately been convicted, disclosure “would compromise more than a de minimis privacy interest, [but] it would not compromise much more.” Id. at 12. We emphasized that, unlike in Reporters Committee, the requested information pertained only to a single, relatively recent prosecution, the details of which were already “readily available to the public” and not at all “ ‘practically] obscure[ ].’ ” Id. at 9 (quoting Reporters Committee, 489 U.S. at 762, 109 S.Ct. 1468) (alteration in original). As for the public interest, we determined that disclosure would have the significant benefit of “shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool,” helping to “inform [the] ongoing public policy discussion” regarding the propriety of warrantless cell phone tracking. Id. at 13. “[I]n light of the strength of [this] public interest ... and the relative weakness of the privacy interests at stake,” we held that the district court had correctly rejected the Department’s contention that production of this docket information would represent an “ ‘unwarranted’ invasion of privacy under Exemption 7(C).” Id. at 16.
Significantly, however, we did not affirm the district court’s holding that information regarding acquittals, dismissals, or sealed cases could be withheld. We did observe that the distinction the district court had drawn “makes some intuitive sense, as both parties agree that the disclosure of information regarding [such cases] raises greater privacy concerns than the disclosure of information regarding public convictions or public pleas.” Id. at 17. But, we continued, “whether that is enough of a distinction to justify withholding under Exemption 7(C) is a harder question.” Id. Because it was unclear from the record whether there were any cases that fell within this category, we opted to forgo resolving the issue, instead vacating this portion of the district court’s decision and “remandpng] the case for th[e] court to determine whether any of the docket numbers refer to cases in which the defendants were acquitted, or to cases that were dismissed or sealed.” Id.
Following our remand, the Department identified 214 prosecutions that had resulted in convictions or public guilty pleas and released the docket information.for these cases. This left a total of fifteen prosecutions that were responsive to the ACLU’s request and had ended in dismissals or acquittals, or had been sealed. Because the ACLU did not challenge the Department’s authority to withhold the information regarding sealed cases, only six remain at issue — four of which were resolved by dismissal and two that ended in acquittal. American Civil Liberties Union v. U.S. Department of Justice, 923 F.Supp.2d 310, 313 (D.D.C.2013). Having established that these six cases in fact existed, Judge Amy Berman Jackson, to whom the case was assigned after Judge Robertson’s retirement, again granted the Department’s motion for summary judgment. Id. at 314.
The ACLU appeals, thus presenting us with the “harder question” we were previously able to avoid. ACLU I, 655 F.3d at 17. Our review is de novo. “In the FOIA context this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are ... exempt from disclosure under the FOIA.” Id. at 5 (internal quotation marks omitted).
II.
As in our previous decision, we begin by assessing the privacy interest at stake. The Department argues that “prosecuted-but-not-convieted individuals *932 are ... in a similar position to persons investigated or arrested but not prosecuted,” and that this court has “accorded] a strong privacy interest to such individuals.” Appellee’s Br. 19. The ACLU argues that the privacy interests of defendants whose prosecutions resulted in dismissals or acquittals are only “marginally greater” than those of defendants who were convicted — which, as we held in our prior decision, are nearly de minimis. Appellants’ Br. 20. Each party overstates its case.
It is true, as the Department observes, that we have regularly concluded that individuals have a “strong interest” in avoiding disclosure of their involvement in “alleged criminal activity.” Fitzgibbon v. CIA 911 F.2d 755, 767 (D.C.Cir.1990) (internal quotation marks omitted); accord, e.g., People for the Ethical Treatment of Animals v. National Institutes of Health, 745 F.3d 535, 541 (D.C.Cir.2014); Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d 856, 866 (D.C.Cir.1981). Those decisions, however, dealt with individuals who were either the subject of or involved in government investigations of criminal activity but never charged with a crime. See ACLU I, 655 F.3d at 7 n. 8. Such individuals’ privacy interests are strong in part because disclosure would “reveal[] to the public that the individual had been the subject of an ... investigation.” Baez v. U.S. Department of Justice, 647 F.2d 1328, 1338 (D.C.Cir.1980) (emphasis added); accord, e.g., Branch v. FBI, 658 F.Supp. 204, 209 (D.D.C.1987). The privacy interest in preventing disclosure is diminished, however, if the fact of someone’s involvement in alleged criminal activity is already a matter of public record — as will be the case when a defendant was indicted. See Reporters Committee, 489 U.S. at 763, 109 S.Ct. 1468; ACLU I, 655 F.3d at 7 & n. 8. Thus, we disagree with the Department that those who have been acquitted or had their cases dismissed and whose involvement in alleged criminal activity has already been publicly revealed are in the same situation as those who were never charged in the first place.
We likewise disagree with the ACLU that the privacy interests of defendants who were indicted but not convicted are essentially indistinguishable from those of defendants who were convicted. To be sure, many of the factors we considered important in concluding that convicted defendants have a relatively weak privacy interest are equally applicable to those individuals whose interests we now consider here. In particular, just as was true with respect to convicted defendants, the requested docket information regarding defendants who were charged but not convicted would “disclose only information that has already been the subject of a public proceeding,” is “available in public records,” ACLU I, 655 F.3d at 8, and is likely readily accessible by the public through “computerized government services like PACER” or even a simple “Google search for that person’s name,” id. at 10. Indeed, as we have observed, this prior public exposure is precisely what distinguishes the individuals whose interests we consider in this case from those who have been investigated but not charged. But the fact that information about these individuals’ cases is a matter of public record simply makes their privacy interests “fade,” not disappear altogether. ACLU I, 655 F.3d at 9 (internal quotation marks omitted); see Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494-95, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (“[T]he interests in privacy fade when the information involved already appears on the public record.”); see Reporters Committee, 489 U.S. at 767, 109 S.Ct. 1468 (“[0]ur cases have ... recognized the privacy interest inherent in the nondisclosure of certain information even where the information *933 may have been at one time public”). Consistent with our decision in ACLU I, we reject the dissent’s surrender of any reasonable expectation of privacy to the Internet — a surrender that would appear to result from a failure to distinguish between the mere ability to access information and the likelihood of actual public focus on that information. See Dissenting Op. at 941-43; cf. United States v. Jones, — U.S. -, 132 S.Ct. 945, 964, 181 L.Ed.2d 911 (2012) (Alito, J., concurring) (concluding that individuals generally have a reasonable expectation in being free of long-term GPS surveillance notwithstanding the ready availability of this technology); id. at 957 (Sotomayor, J., concurring) (suggesting that “it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties,” as that “approach is ill suited to the digital age”). And if individuals not convicted have a substantially greater privacy-interest than convicted individuals to start ■with, then even after both interests are discounted due to prior public revelation, the former interest will remain substantially greater than the latter.
In our view, defendants whose prosecutions ended in acquittal or dismissal have a much stronger privacy interest in controlling information concerning those prosecutions than defendants who were ultimately convicted. The presumption of innocence stands as one of the most fundamental principles of our system of criminal justice: defendants are considered innocent unless and until the prosecution proves their guilt beyond a reasonable doubt. See Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895) (“The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.”). Individuals who are charged with a crime and ultimately prevail of course remain entitled to a version of this presumption. In the eyes of the law, they are not guilty. Cf. Herrera v. Collins, 506 U.S. 390, 399-400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (following conviction, “the presumption of innocence disappears,” and “[t]hus, in the eyes of the law, petitioner does not come before the Court as one who is ‘innocent’ ”). Unfortunately, public perceptions can be quite different. Aware of the heavy burden of proof that the government must satisfy in a criminal prosecution, many may well assume that individuals charged with a crime likely committed that crime regardless of how the case was ultimately resolved. “We all know,” ACLU counsel candidly observed at oral argument, “there are some guilty people who are not convicted.” Oral Arg. Rec. 27:03-:08. Or as former Secretary of Labor Raymond Donovan wondered after being acquitted of larceny and fraud, “Which office do I go to to get my reputation back?” Selwyn Raab, Donovan Cleared of Fraud Charges by Jury in Bronx, N.Y. Times, May 26, 1987, at Al. Thus, if the right to privacy is, at its essence, “the right to be let alone,” Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandéis, J., dissenting), those who are acquitted or whose charges are dismissed have an especially strong interest in being let alone. Although the fact that such defendants were accused of criminal conduct may remain a matter of public record, they are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions.
This special interest in shielding those charged with but not convicted of a crime is reflected in state laws that limit the disclosure of criminal history summaries involving data other than convictions. See, e.g., Conn. Gen.Stat. § 54-142n (“Nonconviction information other than erased information may be disclosed only *934 to: (1) Criminal justice agencies ...; (2) agencies and persons which require such information to implement a statute or executive order that expressly refers to criminal conduct; (3) agencies or persons authorized by a court order, statute or decisional law to receive criminal history record information.”); Haw.Rev.Stat. § 846-9 (providing that “[dissemination of nonconviction data shall be limited” to certain specified entities, but that “[tjhese dissemination limitations do not apply to conviction data”); see also Reporters Committee, 489 U.S. at 754 n. 2, 109 S.Ct. 1468 (observing that “[i]n general, conviction data is far more available outside the criminal justice system than is nonconviction data,” and that in “47 states nonconviction data cannot be disclosed at all for non-criminal justice purposes, or may be disclosed only in narrowly defined circumstances” (internal quotation marks omitted)). It is also reflected in statutes and court decisions providing for the sealing of cases in which the defendant was never convicted. See, e.g., N.Y.Crim. Proc. Law § 160.50 (“Upon the termination of a criminal action or proceeding against a person in favor of such person ..., unless ... the court ... determines that the interests of justice require otherwise ..., the record of such action or proceeding shall be sealed.... ”); Ohio Rev.Code § 2953.52 (“Any person, who is found not guilty of an offense by a jury or a court or who is the defendant named in a dismissed complaint, indictment, or information, may apply to the court for an order to seal the person’s official records in the case.”); see also John P. Sellers, III, Sealed with an Acquittal: When Not Guilty Means Never Having to Say You Were Tried, 32 Cap. U.L.Rev. 1 (2003) (describing Ohio courts’ expansive use of this power). Perhaps most important for our purposes, it is an interest whose relative significance is reflected in our prior decision in this case, in which we observed that the privacy interests of defendants who have been convicted “are weaker than for individuals who have been acquitted or whose cases have been dismissed.” ACLU I, 655 F.3d at 7; see also id. at 8 (emphasizing that, unlike in Reporters Committee, the requested disclosure would “disclose only information concerning a conviction or plea; it would not disclose mere charges or arrests”). Indeed, even our dissenting colleague appears to acknowledge the relative strength of this interest. See Dissenting Op. at 940 (stating that the privacy interests here are “marginally greater than they were in ACLU I”).
Release of the docket information the ACLU seeks would substantially infringe this privacy interest. It would create the risk — perhaps small, see ACLU I, 655 F.3d at 10-11, but nonetheless real — that renewed attention would be paid to the individuals who were the subject of these prosecutions. While this attention would have been warranted at the time of indictment, now that these defendants have been acquitted or had the relevant charges dismissed they have a significant and justified interest in avoiding additional and unnecessary publicity. For example, someone who had been acquitted of accounting fraud after a full and fair trial, moved on with his life, and started a family might be especially dismayed were his neighbors, friends, and family to learn about his previous prosecution due to the publicity associated with the release of the requested information. Or what of a defendant charged with producing child pornography whose case was dismissed after the government identified the real perpetrator, yet is nevertheless viewed with suspicion by those who learn of his mere involvement in such a case? If, as the Supreme Court put it in Reporters Committee, an “ordinary citizen” has a privacy interest “in the aspects of his or her criminal history that may have been wholly forgotten,” *935 certainly that interest is particularly great when the ordinary citizen was never actually convicted but nonetheless might be presumed by the public to have been guilty. 489 U.S. at 769, 109 S.Ct. 1468. Release of this information would also permit the ACLU or others to contact the defendants in question in order to learn more about their cases, something the ACLU has expressly told us it plans to do. Though “relatively minimal,” ACLU I, 655 F.3d at 11, such an intrusion may be especially undesirable for individuals who are understandably trying to put their past ensnarement in the criminal justice system behind them.
III.
Having concluded that defendants who were acquitted or had their cases dismissed have a substantial privacy interest at stake, we must now balance this interest against the public interest in disclosure. Such balancing decisions, generally speaking, are among the most challenging sorts of cases that judges face. Indeed, the task brings to mind the rhetorical question often attributed to Chief Justice Traynor of the California Supreme Court: “Can you weigh a bushel of horsefeathers against next Thursday?” Brainerd Currie, The Disinterested Third State, 28 Law & Contemp. Probs. 754, 754 (1963); cf. also William Prosser, Res Ipsa Loquitur in California, 37 Cal. L.Rev. 183, 225 (1949) (“A presumption ... can no more be balanced against evidence than ten pounds of sugar can be weighed against half-past two in the afternoon.”) (internal quotation marks omitted). In this case, however, the comparison is not so amorphous and the balance, while close, is nonetheless clear.
The ACLU argues that because warrantless cellphone tracking remains an issue of great public concern, the public interest in disclosure is the same as it was the last time this case was before us. According to the Department, .however, the public interest in the disclosure of these six prosecutions is reduced by the prior disclosure of the 214 prosecutions that resulted in convictions. In support, the Department relies on Schrecker v. U.S. Department of Justice, 349 F.3d 657 (D.C.Cir.2003), in which we observed that a court’s “inquiry” into the interest in disclosure “should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.” Id. at 661 (emphasis added).
We have no need to wade into this debate. Even assuming, as the ACLU contends, that the public interest in the disclosure here equals that in ACLU I, that interest pales in comparison to the substantial interests in privacy that are now at stake. The line drawn by Judge Robertson between prosecutions that result in convictions and those that result in dismissals or acquittals is not just one that “makes some intuitive sense,” as we put it in our prior opinion; it is, we now hold, a distinction that is fully consistent with FOIA. Given the fundamental interest individuals who have been charged with but never convicted of a crime have in preventing the repeated disclosure of the fact of their prosecution, we have little hesitation in concluding that release of the remaining information the ACLU seeks “could reasonably be expected to constitute an unwarranted invasion of personal privacy.” 5 U.S.C. § 552(b)(7)(C). Indeed, the government, having brought the full force of its prosecutorial power to bear against individuals it ultimately faded to prove actually committed crimes, has a special responsibility — a responsibility it is fulfilling here — to protect such individuals from further public scrutiny.
IV.
One last issue demands our attention. The ACLU argues that neither this *936 court nor the district court could properly conclude that the Exemption 7(C) balance tilts in favor of withholding because the Department has failed to provide the information necessary to make that determination. The ACLU lists seventeen facts the Department has refused to provide — facts relating to the specifics of the litigation in these six cases, the particular defendants charged, and the degree to which the cases received prior publicity. This information, it claims, might either increase the public benefit that would flow from disclosure of this particular docket information or decrease the privacy interest at stake. To the extent they are relevant at all, however, sixteen of the seventeen specifics the ACLU contends the Department should have produced are facts for which the burden of production actually lies with the ACLU. See National Archives & Records Administration v. Favish, 541 U.S. 157, 172, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) (“Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.”); Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C.Cir.1983) (“[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.”).
The one piece of information requested by the ACLU that the government would have to produce is whether any of the defendants have died. As we have held, not only is an individual’s death “a relevant factor” in assessing the privacy interests implicated by a disclosure involving that individual, but in some circumstances the government must take “certain basic steps to ascertain whether an individual [is] dead or alive.” Schrecker v. U.S. Department of Justice, 254 F.3d 162, 166-67 (D.C.Cir.2001). But although death may “diminish” the relevant privacy interests, it “by no means extinguishes” them because “one’s own and one’s relations’ interests in privacy ordinarily extend beyond one’s death.” Id. at 166; see also Swidler & Berlin v. United States, 524 U.S. 399, 407, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (holding that the attorney-client privilege survives the client’s death because “[c]lients may be concerned about reputation, civil liability, or possible harm to friends or family” and “[p]osthumous disclosure ... may be as feared as disclosure during the client’s lifetime”). Here, even assuming any of the six individuals who were the subject of the prosecutions at issue have died, the relevant privacy interests remain substantial. Deceased defendants never convicted of a crime retain a reputational interest in keeping information concerning their prosecutions out of the public eye. They may also have family members who themselves have a legitimate interest in avoiding the increased scrutiny that could follow from the release of the requested docket information. Cf. Favish, 541 U.S. at 170, 124 S.Ct. 1570 (“FOIA recognizes surviving family members’ right to personal privacy with respect to their close relative’s death-scene images.”). Given the substantial nature of these interests, we conclude that withholding the requested docket information would be justified under Exemption 7(C) even if some or all of the underlying defendants were dead. Accordingly, the district court properly granted the Department’s motion for summary judgment notwithstanding the Department’s apparent failure to investigate this issue.
y.
For the forgoing reasons, we affirm the district court’s grant of summary judgment to the Department.

So ordered.