RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DETROIT FREE PRESS, INC.,

        *Plaintiff-Appellee*,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

        *Defendant-Appellant*.

No. 14-1670

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:13-cv-12939—Patrick J. Duggan, District Judge.

Argued: April 22, 2015

Decided and Filed: August 12, 2015

Before: GUY, COOK, and McKEAGUE, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ARGUED:** Steve Frank, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Herschel P. Fink, DETROIT FREE PRESS, INC., Detroit, Michigan, for Appellee. **ON BRIEF:** Steve Frank, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Herschel P. Fink, DETROIT FREE PRESS, INC., Detroit, Michigan, Paul R. McAdoo, McADOO LAW PLLC, Ypsilanti, Michigan, for Appellee. Bruce D. Brown, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C., for Amici Curiae.

───────────────

**OPINION**

───────────────

PER CURIAM. *Detroit Free Press v. United States Department of Justice*, 73 F.3d 93 (1996) (*Free Press I*), held that the Freedom of Information Act requires government agencies to

1

honor requests for the booking photographs of criminal defendants who have appeared in court during ongoing proceedings. Despite that holding, the United States Marshals Service denied the Free Press's 2012 request for the booking photographs of Detroit-area police officers indicted on federal charges. The district court, bound by *Free Press I*, granted summary judgment to the newspaper in the ensuing lawsuit. We are similarly constrained and therefore AFFIRM, but we urge the full court to reconsider the merits of *Free Press I*.

I.

Congress enacted the Freedom of Information Act (FOIA) in 1966 to "implement a general philosophy of full agency disclosure" of government records. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754 (1989). The statute requires federal agencies to make their opinions and policy statements generally available to the public and to make other records "promptly available" to any person who requests them. 5 U.S.C. § 552(a)(2)–(3). An agency may withhold or redact information that falls within one of nine statutory exemptions. *Id.* § 552(b). Exemption 7(C), the provision at issue here, permits agencies to refuse requests for "records or information compiled for law enforcement purposes" if public release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

*Free Press I* held that Exemption 7(C) did not apply to booking photographs created by federal law-enforcement agencies. Specifically, the court held that "no privacy rights are implicated" by releasing booking photographs "in an ongoing criminal proceeding, in which the names of the defendants have already been divulged and in which the defendants themselves have already appeared in open court." *Free Press I*, 73 F.3d at 97. It reasoned that booking photographs of individuals who have "already been identified by name by the federal government" and whose "visages ha[ve] already been revealed during prior judicial appearances" reveal "[n]o new information that . . . indictees would not wish to divulge" to the public. *Id.* The court expressly declined to address whether releasing the images following acquittals, dismissals, or convictions would implicate privacy interests. *Id.* Judge Norris dissented, maintaining that a booking photograph conveys "much more than the appearance of

the pictured individual," including his "expression at a humiliating moment." *Id.* at 99 (Norris, J., dissenting).

In the wake of *Free Press I*, the United States Marshals Service adopted a "bifurcated policy" for releasing booking photographs. It required agency offices located within the Sixth Circuit's jurisdiction to honor all requests for photographs in their possession, and mandated that offices in other jurisdictions release photographs to residents of the four states within the Sixth Circuit. The government suggests that national media organizations exploited that policy by employing "straw man" requesters in Michigan, Ohio, Kentucky, and Tennessee to obtain records maintained in other jurisdictions.

For fifteen years, *Free Press I* was the only circuit-level decision to address whether Exemption 7(C) applied to booking photographs. But the Tenth and Eleventh Circuits recently considered the issue, and both disagreed with this court's analysis. *See World Publ'g Co. v. Dep't of Justice*, 672 F.3d 825 (10th Cir. 2012); *Karantsalis v. Dep't of Justice*, 635 F.3d 497 (11th Cir. 2011) (per curiam) (adopting district court opinion), *cert. denied*, 132 S. Ct. 1141 (2012). The United States Marshals Service abandoned its bifurcated policy in 2012 in light of the circuit split.

The Free Press submitted the FOIA request at issue here after the policy's demise. When the Deputy U.S. Marshal for the Eastern District of Michigan denied the request, the Free Press sued, the district court granted the newspaper summary judgment, and the government timely appealed.

II.

Although we must follow *Free Press I*, *see* 6th Cir. R. 32.1(b), we urge the full court to reconsider whether Exemption 7(C) applies to booking photographs. In particular, we question the panel's conclusion that defendants have no interest in preventing the public release of their booking photographs during ongoing criminal proceedings. *See Free Press I*, 73 F.3d at 97.

Exemption 7(C) protects a non-trivial privacy interest in keeping "personal facts away from the public eye," *Reporters Comm.*, 489 U.S. at 769, particularly facts that may embarrass, humiliate, or otherwise cause mental or emotional anguish to private citizens, *see Nat'l Archives*

& *Records Admin. v. Favish*, 541 U.S. 157, 166–71 (2004) (families have a privacy interest in photographs of a relative's death scene); *Rimmer v. Holder*, 700 F.3d 246, 257 (6th Cir. 2012) (suspects and third parties have a privacy interest in avoiding embarrassment, humiliation, or danger that could result from releasing records of an investigation); *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 287–88 (2d Cir. 2009) (abused detainees and their abusers both possess privacy interests in avoiding embarrassment and humiliation resulting from the public release of records detailing abuse).  Booking photographs convey the sort of potentially embarrassing or harmful information protected by the exemption: they capture how an individual appeared at a particularly humiliating moment immediately after being taken into federal custody.  *See Karantsalis*, 635 F.3d at 503; *Free Press I*, 73 F.3d at 99 (Norris, J., dissenting); *Times Picayune Publ'g Corp. v. U.S. Dep't of Justice*, 37 F. Supp. 2d 472, 477 (E.D. La. 1999).  Such images convey an "unmistakable badge of criminality" and, therefore, provide more information to the public than a person's mere appearance.  *United States v. Irorere*, 69 F. App'x 231, 235 (6th Cir. 2003); *cf. N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc) (explaining that an audio recording conveys more than a verbatim transcript of the recording, because "information recorded through the capture of a person's voice is distinct and in addition to the information contained in the words themselves").

A criminal defendant's privacy interest in his booking photographs persists even if the public can access other information pertaining to his arrest and prosecution.  Individuals do not forfeit their interest in maintaining control over information that has been made public in some form.  *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 932 (D.C. Cir. 2014) ("[T]he fact that information about [individuals who were indicted but not convicted] is a matter of public record simply makes their privacy interests [in their case names and docket numbers] 'fade,' not disappear altogether."); *Prison Legal News v. Exec. Office for U.S. Attorneys*, 628 F.3d 1243, 1249–50 (10th Cir. 2011) (holding that Exemption 7(C) permitted the government to withhold autopsy photographs and a portion of a video depicting a brutal prison murder even though the images and video were displayed publicly in a courtroom during two trials); *see also Reporters Comm.*, 489 U.S. at 770 ("[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.").

Further, criminal defendants do not forfeit their interest in controlling private information while their cases remain pending. Even if an individual possesses a *heightened* interest in controlling information about his past entanglements with the criminal justice system, *see Free Press I*, 73 F.3d at 97, it does not follow that he has *zero* interest in controlling what information becomes public during ongoing proceedings. Moreover, booking photographs often remain publicly available on the Internet long after a case ends, undermining the temporal limitations presumed by *Free Press I*.[1]  *Cf. Reporters Comm.*, 489 U.S. at 771 (noting that the advent of technology allowing computers to store information about an individual's criminal history "that would otherwise have surely been forgotten" contributes to a "substantial" privacy interest in FBI-compiled rap sheets).

III.

In sum, several factors merit revisiting *Free Press I*. But we remain bound by our precedent and therefore AFFIRM.

---

[1] We doubt that the panel accounted for Internet search and storage capabilities when deciding *Free Press I*. Notably, the panel issued its opinion nearly two years before Google registered as a domain in September 1997. *See* Google, *Our history in depth*, http://www.google.com/about/company/history/ (last visited Aug. 5, 2015).