COLE, Chief Judge,
concurring.
I agree with the majority that criminal defendants have a non-trivial privacy interest in their booking photographs. And I agree that the time has come to overrule our decades-old decision in Detroit Free Press, Inc. v. Dep’t of Justice (Free Press I), 73 F.3d 93 (6th Cir. 1996). I write separately only to emphasize two points touched upon by the majority.
First, Exemption 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(C), plainly extends to a private individual’s desire to avoid disclosure of personal details that may be humiliating, embarrassing, or painful. See Nat’l Archives & Records Admin. v. Favish, 541 U.S. 157, 166-67, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); U.S. Dep’t of Justice v. Reporters Comm. for Freedom of Press, *486 489 U.S. 749, 770, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Mugshots fit the bill.
Twenty years ago, we thought that the disclosure of booking photographs, in ongoing criminal proceedings, would do no harm. But time has taught us otherwise. The internet and social media have worked unpredictable changes in the way photographs are stored and shared. Photographs no longer have a shelf life, and they can be instantaneously disseminated for malevolent purposes. Mugshots now present an acute problem in the digital age: these images preserve the indignity of a deprivation of liberty, often at the (literal) expense of the most vulnerable among us. Look no further than the online mugshot-extortion business. In my view, Free Press / — though standing on solid ground at the time — has become “inconsistent with the sense of justice.” See B. Cardozo, The Nature of the Judicial Process 150 (1921). These evolving circumstances permit the court to change course.
Second, I understand the majority’s approach as simply “providing a workable formula which encompasses, balances, and protects all interests.” See S. Rep. No. 89-813, at 38 (1965). Congress structured Exemption 7(C) to at once promote “a general philosophy of full agency disclosure” and “protect certain equally important rights of privacy.” Id.; see also U.S. Dep’t of Def. v. FLRA, 510 U.S. 487, 494, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994).
Today’s opinion, as I read it, does not foreclose the possibility that, in the appropriate case, a requester might make a meaningful showing of the “significant public interest” in “reveal[ing] the circumstances surrounding an arrest and initial incarceration.” See Free Press I, 73 F.3d at 97-98 (noting, in dicta, the potential for “public oversight” of law enforcement conduct); see also Favish, 541 U.S. at 173-75, 124 S.Ct. 1570 (discussing the showing required to substantiate an “asserted public interest in uncovering deficiencies or misfeasance” in government investigations). There will be time enough to deal with such a situation. The majority rightly gives the lower courts the chance to balance, in the first instance, the equally important values of public disclosure and personal privacy. Neither is abrogated.
With this explanation, I join the majority’s persuasive opinion in full.