# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 20, 2017     Decided October 31, 2017

No. 16-5263

HOWARD BLOOMGARDEN,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00843)

Torrence E.S. Lewis argued the cause for appellant. With him on the brief were Howard W. Anderson III and Scott Hodes.

Jaynie Lilley, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was Mark B. Stern, Attorney. R. Craig Lawrence, Assistant U.S. Attorney, entered an appearance.

Before: PILLARD and WILKINS, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:  Over two decades ago, the Department of Justice sent a proposed termination letter to one of its Assistant United States Attorneys ("the Assistant") working in the Eastern District of New York (EDNY).  The letter alleged a series of professional inadequacies.  Appellant Bloomgarden, serving a sentence of life imprisonment without parole, sought a copy of that letter under FOIA.

The Assistant served as lead prosecutor in an investigation of a series of crimes committed by Appellant, leading to several convictions in New York and California.[1]  After Appellant's FOIA suit, most of the approximately 3,600 pages of exhibits supporting the proposed termination letter were turned over to Appellant – but not the letter itself.  The Appellant hopes that the content of the letter will somehow help him in contesting his sentence.  The government declined to release the letter pursuant to Exemption 6 of FOIA, which can protect personal privacy.  The district court, balancing the public interest against the Assistant's privacy interest, determined that the latter clearly outweighed the former and therefore granted summary judgment for the government.  We affirm.  We also reject Appellant's request that the judgment be modified.

---

[1]After entering a guilty plea in the U.S. District Court for EDNY, Appellant received a sentence of 405 months following his conviction of multiple offenses.  He was subsequently convicted of two murders in California state court, where he was sentenced to life imprisonment without parole.  The California convictions remain on direct appeal in the state courts.

3

**I.**

The Assistant worked in EDNY for at least three years. His performance was evidently unsatisfactory. He was terminated as a probationary employee in 1995, but after he appealed to the Merit Systems Protection Board (MSPB) on the ground that he had passed the probationary period, he was reinstated with back pay. But the U.S. Attorney for EDNY promptly initiated the process for termination of a permanent employee by sending the Assistant a proposed termination letter. That letter – the subject of this dispute – according to the government, "set[s] forth the charges and specifications," but it explicitly "states that it is not a final decision; that a final decision . . . will be made by Dennis M. Corrigan, Chief of Staff to the Deputy Attorney General; and that [the Assistant] has the right to reply . . . ." We are told that three letters were exchanged between the Assistant and Mr. Corrigan. Two have been withheld under Exemption 6 and are not sought by Appellant. In the third, which has been released, Mr. Corrigan cryptically states: "I have forwarded your request to [the Executive Office for U.S. Attorneys] for action." It would appear that the Assistant's request was for resignation rather than termination, but we cannot be certain. In any event, although the Assistant may have filed a notice of appeal with the MSPB, there is no record of any proceeding and we can infer that Assistant's employment terminated in 1997. The Assistant currently practices law in the state of New York.

The district judge, after examining the exhibits and reviewing the letter *in camera*, determined that the letter only described "instances of garden-variety incompetence and insubordination" on the part of a single staff-level attorney, and that "there is little public interest in a single, largely unremarkable disciplinary matter regarding a former AUSA [Assistant] who left government service two decades ago." This

did not outweigh the Assistant's "strong interest in avoiding the professional embarrassment that disclosure would likely cause." This appeal followed. As the material facts are undisputed, we review this case *de novo*.

## II.

Exemption 6 of FOIA allows the government to withhold "personnel . . . files the disclosure of which would constitute a *clearly* unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). Although Appellant is obviously motivated by his own litigation, in considering the public interest, we are not permitted to consider any special interest of the requestor – rather we must consider only the interest of members of the general public in learning "what their government is up to." *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).

To be sure, we have said that there is a substantial public interest in the "potential innocence of individuals sentenced to death," *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1176 (D.C. Cir. 2011), which supported the legitimacy of a FOIA request for potentially exculpatory material concerning a pending death sentence. But as the circumstances here differ materially from those of *Roth*, we find the public-interest rationale of that case inapposite.

Appellant argues that prosecutors have a uniquely powerful role among government employees, even as compared with other lawyers in the Justice Department, and therefore that the public interest in this disciplinary process is significant – particularly since the Assistant contributed to a capital

prosecution.[2]  Although this request is for only one prosecutor's grounds for termination, it is claimed that it will give the public a road map to the Department's disciplinary policy relating to prosecutors, and that the mass of exhibits that have been disclosed suggests that the Assistant must have engaged in severe misconduct over a relatively long period of time – at least three years – suggesting a certain departmental laxness.

As to the Assistant's privacy interest, Appellant argues he is not a private citizen whose personnel records are possessed by the government; instead, the Assistant was a government employee who should be entitled to a lesser degree of privacy. *Cf. Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981).

Appellant, therefore, insists that the district judge, in balancing the public interest against the Assistant's privacy interest, was erroneous.  He points out that the "clearly unwarranted" phrase in Exemption 6 must be contrasted with the bare word "unwarranted" in Exemption 7(C).  *See* 5 U.S.C. § 552(b)(7)(C) (exempting "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy").  Indeed, the Supreme Court has noted that this distinction resulted from deliberate congressional choice, *Dep't of the Air Force v. Rose*, 425 U.S. 352, 378 n.16 (1976), and we have said that "under Exemption 6, the

---

[2]We note that while he participated in a "state-federal investigation" and cooperated with Los Angeles County prosecutors, the Assistant served as a federal prosecutor in EDNY, where Appellant did not face capital charges.

presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982). Moreover, FOIA makes clear that the government bears the burden of rebutting this presumption. 5 U.S.C. § 552(a)(4)(B).

Still, we agree with the district court that the substantial privacy interest in this case outweighs the rather modest public interest. After all, this letter presenting allegations against the behavior of the Assistant is over twenty years old. To be sure, there is no expiration date on either the subject of FOIA requests or the interests protected by the Act's exemptions, *see Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003), but the letter does not necessarily reveal anything of present personnel policies, and as a piece of history it is hardly momentous.

Even assuming *arguendo* Appellant is correct that Justice Department prosecutors are particularly powerful government lawyers, and that the public interest in how they are restrained is therefore significant, our examination of the letter *in camera* reveals only alleged unprofessionalism of a sort in which any junior attorney might engage, not allegations of prosecutorial misconduct or other abuse of a federal prosecutor's powers.

The sheer volume of exhibits attached to the letter by no means supports any different conclusion. The thousands of pages of exhibits – most of which have been released to Appellant – are simply documents that the Assistant worked on and public court records from his cases, used to illustrate points relevant to the letter; they do not identify or censure any

misbehavior.[3]   That surely is why Appellant quotes none of them.  In short, we think the district court was quite correct in concluding the letter is not a road map to DOJ policies, but only an allegation of "garden-variety incompetence and insubordination."

Still, even so, there is undoubtedly some public interest in disclosure, so we turn to the privacy interest against which the public interest is to be balanced.  We think the privacy interest is quite substantial.  We think so not just because the Assistant is now a practicing lawyer who would undoubtedly be quite embarrassed by disclosure of a proposed discipline letter from many years ago.  *Cf. Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998); *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990).  The aspect of the letter that concerns us the most is that it contains mere allegations; it was never tested, nor was it ever formally adopted by the deputy-attorney general's office.  It appears there was some sort of settlement leading to the Assistant's resignation, but we cannot determine how many of the specific allegations were endorsed by the deputy-attorney general's office.  We have previously indicated our concern with disclosure of allegations.

---

[3]The released pages include, for example, "Attorney's case notes," "facsimile to AUSA from Secret Service providing synopsis of information about investigation of a third party individual," "affidavit of mailing form," "handwritten notes describing particulars of a case against a third party," "Photocopies of checks," "Mobile Transaction Log of a third party individual," "Fax transmission report," "Faxed Transcript of an audio recording of an informant and a third party," "List of Email addresses," and dozens of "Blank Page" entries.  Any inference of a correlation between quantity of exhibits and the existence of misconduct, or severity thereof, thus appears unfounded.

Even those "accused of criminal conduct . . . are entitled to move on with their lives without having the public reminded of their alleged but never proven transgressions." *ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014).

Alternatively, Appellant contends that the Assistant placed the letter into the public domain, thus waiving his privacy interest. We have held that Appellant carries the burden of production to demonstrate that this is so. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992). As we noted, there are some hints in the record that the Assistant may have, once again, filed a notice of appeal with the MSPB – but nothing indicates that such an appeal was pursued, nor is there any record of the letter or any material referring to the letter that was made public. Appellant's waiver argument is therefore easily rejected.

In sum, we think privacy interests sufficiently outweigh the limited public interest in the letter to make its disclosure clearly unwarranted.

\* \* \*

Appellant also seeks reform of the judgment below, which dismissed his amended complaint with prejudice. He contends that because the District Court ordered release of over 3,000 pages of documents in prior rulings, its ruling should show that he "partially prevailed in this action, thereby entitling him to recover costs" under the Federal Rules of Civil Procedure. According to Appellant, the negative language in the judgment is misleading: he sought the release of documents, and he in fact succeeded with respect to many of them.

It is true that Rule 54 allows costs "to the prevailing party." Fed. R. Civ. Pro. 54(d)(1).  But for purposes of cost recovery under FOIA, the form of the judgment does not determine which party prevailed.  *See* 5 U.S.C. § 552(a)(4)(E); *Davy v. CIA*, 456 F.3d 162, 164-66 (D.C. Cir. 2006).  In any event, the government concedes that the earlier release of documents need not be mentioned in the most recent judgment for plaintiff to be eligible for cost recovery.  Since the issue of costs is not yet before us, we do not wish to speculate as to whether they may ultimately be granted or denied.  And as for the fact that the judgment does not reflect the previous orders releasing documents, that is just as the Rules command: "A judgment should not include . . . a record of prior proceedings."  Fed. R. Civ. Pro. 54(a).  There is thus no basis upon which to grant Appellant's plea for modification of the judgment.

\* \* \*

Because the Department of Justice has carried its burden of demonstrating that disclosure of the proposed termination letter is "clearly unwarranted" given the privacy interest at stake, and because no grounds exist for modification of the judgment below, we affirm in full.

*So ordered.*