# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 22, 2017        Decided December 1, 2017

No. 16-5366

JUDICIAL WATCH, INC.,
APPELLANT

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01740)

———

*Paul J. Orfanedes* argued the cause for appellant. With him on the briefs was *Lauren M. Burke*.

*Nicolas Y. Riley*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Douglas N. Letter*, Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Judicial Watch filed a Freedom of Information Act ("FOIA") request seeking disclosure of "[a]ll

versions of indictments against Hillary Rodham Clinton" arising out of the Independent Counsel's investigation begun in 1994. Although a great deal of information has been released to the public in connection with the Independent Counsel's investigation, a draft indictment mentioned in a 1999 *New York Times* article and a book published in 2010 has not. Because a draft indictment implicates serious privacy concerns, Judicial Watch was required to demonstrate "exceptional interests" warranting disclosure. *Fund for Constitutional Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 866 (D.C. Cir. 1981). Judicial Watch has not made that showing, nor shown a proper segregability analysis was not conducted. Accordingly, we affirm the grant of summary judgment to the National Archives and Records Administration.

## I.

In January 1994, the Attorney General appointed an Independent Counsel "to investigate . . . whether any individuals or entities have committed a violation of any federal criminal or civil law relating in any way to President William Jefferson Clinton's or Mrs. Hillary Rodham Clinton's relationships with: (1) Madison Guaranty Savings & Loan Association; (2) Whitewater Development Corporation; or (3) Capital Management Services." 28 C.F.R. § 603.1(a). An investigation was conducted from 1994 to 2002. The Independent Counsel's final report was published in five parts between 2000 and 2002. *See, e.g.*, Final Report of the Independent Counsel, *In re Madison Guaranty Savs. & Loan Ass'n* (Jan. 5, 2001) ("Final Report"). A partially redacted memorandum prepared by staff summarizing the evidence before the Independent Counsel's Office was released in 2014 as a result of a FOIA request by Judicial Watch. In addition, committees of both Houses of Congress conducted investigations, and the testimony and committee reports are

available to the public. *See* Investigation of Whitewater Development Corporation and Related Matters, S. REP. NO. 104-280 (1996); Hearings on Collapse of the Madison Guaranty Savings and Loan, H. Comm. on Banking & Fin. Servs., 104th Cong. (Aug. 7, 1995).

There also have been public references to a draft indictment of Mrs. Clinton. Nearly two decades ago, the *New York Times* published an article that referred to a draft indictment prepared by Deputy Independent Counsel Hickman Ewing. Steve Barnes, *Court Told of Draft Indictment That Included the First Lady*, N.Y. Times, Mar. 19, 1999. Seven years ago, a book about the Independent Counsel's investigation also referred to a draft prepared by Deputy Ewing. Ken Gormley, *The Death of American Virtue: Clinton v. Starr* 478 (Broadway Books 2010). The draft indictment has not been publicly released. It is publicly known, however, that the Independent Counsel investigated whether Mrs. Clinton committed perjury, made false statements, or obstructed justice during the investigation and "concluded that there was insufficient evidence to prove beyond a reasonable doubt that Mrs. Clinton had committed any federal criminal offense." Final Report at 411.

On March 9, 2015, Judicial Watch submitted a FOIA request to the National Archives as custodian for "[a]ll versions of indictments against Hillary Rodham Clinton." *See* 28 U.S.C. § 594(k). The FOIA officer denied the request, invoking FOIA Exemption 7(C), which shields from disclosure certain law-enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). Judicial Watch's appeal to the Deputy Archivist was unsuccessful. On October 20, 2015, Judicial Watch filed suit against the National Archives, and the parties filed cross motions for summary judgment. Attached to

the National Archives' motion was the declaration of its FOIA officer invoking Exemption 7(C) because Mrs. Clinton's privacy interests outweighed the public interest in disclosure, as well as Exemption 3, regarding matters exempted from disclosure by statute, 5 U.S.C. § 552(b)(3), and Federal Rule of Criminal Procedure 6(e) because disclosure would violate the secrecy of grand jury proceedings. Decl. Martha Wagner Murphy, Chief, Special Access and FOIA Staff, Feb. 1, 2015. In a supplemental declaration the FOIA officer explained that a draft indictment "is inextricably tied to the Grand Jury process," and that "individuals . . . never indicted, charged and convicted of any criminal wrongdoing retain a significant personal privacy interest with respect to draft indictments that were contemplated by the [Independent Counsel], discussed internally among IC staff, but ultimately never issued." Supp. Decl. of Apr. 18, 2016, ¶¶ 7-8.

The district court granted summary judgment to the National Archives, ruling the requested records were properly withheld pursuant to Exemptions 3, 6, and 7(C) and that the National Archives had made a proper segregability analysis and the documents could be withheld in their entirety. *Judicial Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 214 F. Supp. 3d 43 (D.D.C. 2016). Judicial Watch appeals, and our review is *de novo. See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).

## II.

The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). The exemptions "must be narrowly construed," *id.* at 565 (internal quotation marks and citation omitted), and the burden is on the government to provide

"reasonably specific" justifications indicating that documents "logically" or "plausibl[y]" fall within the claimed exemption, *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks and citations omitted). Exemption 7(C) covers "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7). In applying this exemption, the court must "balance the [] privacy interest against the public interest in disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004).

The court has recognized that although public officials "may have a somewhat diminished privacy interest," they "do not surrender all rights to personal privacy when they accept a public appointment." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1092 (D.C. Cir. 2014) (internal citation and quotation omitted). Although the existence of the Independent Counsel's investigation of her is public knowledge, Mrs. Clinton, then, "retain[s] a . . . distinct privacy interest in the *contents* of the investigative files." *Id.* Indeed, Judicial Watch acknowledges that Mrs. Clinton has a privacy interest but maintains, in view of her official positions as First Lady, United States Senator, and the Secretary of State, that the release of the Independent Counsel's Final Report and evidentiary summary renders her "generic" privacy interests minimal. Applt's Br. 24-25. This position overlooks the fact that Mrs. Clinton's privacy interest is heightened in the context of a draft indictment.

"[W]here individuals have been investigated but not charged with a crime," disclosure of material properly exempt under Exemption 7(C) "represents a severe intrusion on the privacy interests of the individual[] in question." *Fund for Constitutional Gov't*, 656 F.2d at 866. The requested records

concern a staff-proposed formal government accusation of criminal conduct. An unissued draft indictment by definition contains unproven allegations that were never adopted by the Independent Counsel much less by a grand jury. *Cf. Bloomgarden v. U.S. Dep't of Justice*, 874 F.3d 757, 761 (D.C. Cir. 2017). No indictment charging Mrs. Clinton with a crime was ever issued by a grand jury, nor was any criminal conviction of her obtained by the Independent Counsel. *See* Final Report at 411.

"The disclosure of th[e] [requested] information would produce the unwarranted result of placing [Mrs. Clinton] in the position of having to defend [her] conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings." *Fund for Constitutional Gov't*, 656 F.2d at 865. Although she may not be entitled as a public figure to any more protection under Exemption 7(C) than the average person, the potential immediate harm to her would appear to be augmented simply because the Independent Counsel's investigation of President and Mrs. Clinton attracted great public attention. Indeed, at the time Judicial Watch filed its request she was contemplating running for President of the United States and declared her candidacy shortly thereafter. Not only would she be without the procedural protections accorded to a person accused of a crime, but the release after so many years also means the defunct Office of Independent Counsel would be unavailable to explain its decision not to seek an indictment against her. These circumstances threaten the presumption of innocence at the heart of the justice system. *ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014) (citing *Coffin v. United States*, 156 U.S. 432, 453 (1895)). As indicated during oral argument, it is difficult to imagine circumstances where a draft indictment could ever be disclosed without seriously infringing an individual's privacy interest. *See, e.g.,* Oral Argument at 22:47-23:50. Having

never been formally "accused of criminal conduct" by the Independent Counsel, Mrs. Clinton, no less than an individual who has been charged but not convicted, is "entitled to move on with [her] li[fe] without having the public reminded of [her] alleged but never proven transgressions." *ACLU*, 750 F.3d at 933.

Consequently, Mrs. Clinton's significant privacy interest in the contents of the Independent Counsel's investigative files "should yield only where exceptional interests militate in favor of disclosure." *Fund for Constitutional Gov't*, 656 F.2d at 866. Judicial Watch has identified no such interests. First, Judicial Watch maintains that disclosure would help the public learn more about the operations of the Office of Independent Counsel. There is doubtless a "weighty public interest" in evaluating government investigations of public officials. *CREW*, 746 F.3d at 1092. That interest is greatly reduced, however, precisely because of the voluminous information already in the public domain about the Independent Counsel's investigation of President and Mrs. Clinton. The political branches of the federal government have assessed the evidence and documented their proceedings and findings in publicly available reports. *See Fund for Constitutional Gov't*, 656 F.2d at 865. As noted, the Independent Counsel released a final report and a staff summary of the evidence has been released as well, and Committees of both Houses of Congress have released information about their investigations. In these circumstances, the incremental public interest in learning how the Independent Counsel carried out his investigation of Mrs. Clinton by disclosure of a draft indictment appears slight. Mere "general public curiosity" is not enough. *Fund for Constitutional Gov't*, 656 F.2d at 866.

Second, Judicial Watch maintains there is renewed interest in independent counsel investigations. Even assuming this is

true, a party seeking disclosure of investigative materials must still "adequately support[] its 'public interest' claim with respect to the *specific* information being withheld." *Senate of the Commonwealth of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987). Judicial Watch has not identified what additional insights the public would glean from disclosure of staff drafts of an indictment of Mrs. Clinton. The nature of possible criminal activity by Mrs. Clinton that the Independent Counsel investigated is identified in the Final Report and a staff memorandum summarizes the evidence before that Office. It is true that the court concluded in *CREW*, 746 F.3d at 1093, that disclosure of witness statements, prosecution reports, and memoranda related to the investigation of a former Majority Leader of the United States House of Representatives could shine a light on "the diligence of the [Federal Bureau of Investigation]'s investigation and the [Department of Justice]'s exercise of its prosecutorial discretion[,]" specifically "whether the government had the evidence but nevertheless pulled its punches." Unlike *CREW*, the instant case concerns a draft indictment where voluminous information about the Independent Counsel's investigation has been released. Judicial Watch and the public at large can more readily assess whether the Independent Counsel "pulled its punches." Nor has Judicial Watch explained how disclosure of a draft indictment would improve public understanding of the wisdom of appointing special prosecutors in general. The asserted interest fails to rise above "general public curiosity." *See Fund for Constitutional Gov't*, 656 F.2d at 866.

Further, by providing a detailed description of the requested documents, identifying applicable exemptions, and explaining why they could not be released in redacted form, the National Archives properly withheld the documents in full. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002); 5 U.S.C. § 552(b). Judicial Watch's assertion

that no segregability analysis was undertaken ignores that its request was for "[a]ll versions of indictments," not more informal statements by prosecutors. The National Archives' response to its request was appropriate. *See Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).