[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12421
_____

D.C. Docket No. 3:16-cv-00074-DHB-BKE

THOMAS W. SIKES,

Plaintiff - Appellant,

versus

UNITED STATES DEPARTMENT OF THE NAVY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 19, 2018)

Before MARTIN, JULIE CARNES, and O'SCANNLAIN,[*] Circuit Judges.

_____

[*] Honorable Diarmuid F. O'Scannlain, United States Circuit Judge for the Ninth Circuit, sitting by designation.

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States Department of the Navy improperly withheld documents related to the suicide of Admiral J.M. Boorda in response to a request made under the Freedom of Information Act.

I

In 1996, United States Navy Admiral J.M. Boorda, then Chief of Naval Operations, committed suicide in Washington, D.C.  He left two suicide notes at his home: one addressed to his sailors, which the Navy later released publicly, and one to his wife, which has not been released.  These documents were found by Naval investigators and added to the Navy's investigative file for Adm. Boorda's death, as were a number of other documents, including six pages of handwritten notes regarding official business found in the backseat of Adm. Boorda's official vehicle (the "backseat notes").

Thomas Sikes asserts that he is working on a book about the pressures of holding military office, in which Adm. Boorda's death will feature prominently. For years, he has sought to obtain from the Navy copies of various records related to Adm. Boorda's suicide, including both the backseat notes and the suicide note to Adm. Boorda's wife.

2

A

In August 2011, Sikes filed two requests with the Navy under the Freedom of Information Act (FOIA) asking for certain documents related to Adm. Boorda. Request 1 asked for a list of the individuals who were invited to or who attended the ceremony during which Adm. Boorda took office as Chief of Naval Operations.  The Navy gave Sikes that list but with many of the names redacted. Request 2 asked for copies of all documents found by Naval investigators in Adm. Boorda's vehicle the day he died, including the backseat notes.  The Navy refused to provide those documents, arguing that they were seized during the course of an investigation and were therefore not agency records.

In May 2012, Sikes filed suit against the Navy, asking that it be ordered to produce the documents responsive to Requests 1 and 2.  Little over a month into litigation, the Navy gave Sikes eleven pages of material (including the backseat notes) in response to Request 2 and moved to dismiss Sikes's corresponding claim as moot.  The district granted the motion, finding that "all of the documents responsive to Plaintiff's FOIA Request 2 have been disclosed."  Sikes later asked that the Navy provide some additional verification that it had indeed given him everything within the scope of Request 2, but the Navy never provided such verification.

3

The parties continued to litigate Sikes's Request 1 until the court ultimately granted summary judgment to Sikes and ordered the Navy to give him an unredacted copy of the attendee list.  *See* Order Granting Motion for Summary Judgment in Part at 41, *Sikes v. United States*, No. 3:12-cv-00045 (S.D. Ga. Dec. 6, 2013) ("*Sikes I*").  In April 2014, the court entered final judgment and awarded Sikes more than $45,000 in attorneys fees.  Neither party appealed.

B

In 2014, Sikes submitted eight more FOIA requests regarding Adm. Boorda, many of which were redundant.  Two requests (5 and 10) are pertinent to this appeal.

Request 5, submitted on April 30, 2014, asked for another copy of the records that had been retrieved from Adm. Boorda's car and given to Sikes in response to his earlier Request 2.  Specifically, Request 5 asked the Navy to "furnish a complete copy of all material requested by me on August 26, 2011, in [Request 2]."  The request also complained that no Navy official had ever "attested that the material previously furnished" in response to Request 2 "constituted *all* of the documents in the Navy's possession that came within the scope of" Request 2. In response, the Navy provided no documents to Sikes, but asserted that a "review of the investigative file has determined that you have been provided a complete copy of all documents originally requested via [Request 2]."  After Sikes filed an

4

administrative appeal from the agency's response, the Navy confirmed that it had "again reviewed the investigative file and determined that the records provided . . . in response to your request of August 26, 2011, were complete." The Navy asserted that FOIA did not require the agency "to conduct additional searches in response to repetitive requests," and further that Sikes's demand for "certification" of those earlier-disclosed materials had no basis under the statute.

Request 10, submitted on November 10, 2014, asked for an unredacted copy of the Navy's 1996 Report of Investigation into Adm. Boorda's suicide. In response, the Navy gave Sikes a redacted version of that report. The Navy withheld from the report a copy of the suicide note Adm. Boorda left at his home for his wife, citing FOIA privacy exemptions. Sikes again filed an administrative appeal with the Navy, arguing that the withholding of the suicide note was improper, but to no avail.

## C

### 1

In September 2016, Sikes filed a second lawsuit against the Navy, which stated two causes of action for improper withholding of agency records under FOIA.

With respect to Request 5, Sikes alleged that the Navy had improperly withheld the materials found in Adm. Boorda's car, including the backseat notes.

5

Sikes's complaint also detailed why he had requested those materials a second time. Namely, he alleged that after the Navy gave him the backseat notes in 2012, he received another memo from the Navy which stated that it had in fact destroyed such notes in 1998. He alleged that he thus had reason to believe the Navy's 2012 production of the purported notes was false or fraudulent. He sought to compel the Navy to give him the notes once again, so that he could compare them to what he was given in 2012.

As to Request 10, Sikes alleged that the Navy had wrongfully withheld the suicide note Adm. Boorda wrote to his wife. He alleged two bases for improper withholding. First, he alleged that the Navy had previously disclosed the note by publishing a blurry photo of it, and thus could no longer withhold it. Alternatively, he alleged that the Navy had improperly withheld the note under FOIA's privacy exemptions, because public interest in the note outweighed the privacy interests of Adm. Boorda and his family. He once again requested that the court compel the Navy to produce an unredacted version of the suicide note to him.[1]

2

The Navy moved to dismiss Sikes's complaint both for lack of jurisdiction and for failure to state a claim. The district court granted the motion, in effect

---

[1] In the alternative to compelling production of the requested documents, Sikes asked the court to compare such documents to putative copies of them that he possessed, and to certify whether the Navy's actual records matched his copies. He no longer seeks such remedy on appeal.

finding that Sikes had not sufficiently stated a claim for improper withholding of either the materials from Adm. Boorda's car or the suicide note.[2]

Regarding Sikes's Request 5 claim, the court found that the Navy had not withheld the materials from Adm. Boorda's car (let alone improperly), because it had already produced those same records in response to his earlier Request 2. Regarding the Request 10 claim, the district court rejected Sikes's contention that the Navy had previously disclosed the contents of the suicide note by publishing an illegible photo it. The court failed to address Sikes's alternative contention that—even if the suicide note had not previously been disclosed—the Navy's withholding of the note under FOIA's privacy exemptions was improper.

Sikes timely appealed.

II

Sikes first argues that the district court erred in dismissing his claim that, in response to Request 5, the Navy improperly withheld the documents found in

---

[2] The district court styled its dismissal as one for lack of subject matter jurisdiction, because FOIA grants federal courts the authority to compel the production of agency records only where such records have been "improperly withheld." *See* 5 U.S.C. § 552(a)(4)(B); *Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009). The district court's analysis, however, turned on its assessment of the *merits* of Sikes's claims of improper withholding. That is, Sikes's lawsuit certainly *alleges* that the Navy improperly withheld records under FOIA; the district court dismissed the suit only after determining that such allegations are meritless. Thus, despite the district court's characterization of its order, it should properly be viewed as one for failure to state a claim upon which relief may be granted. *Cf. Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566–67 (2d Cir. 2016) (concluding that the elements of § 552(a)(4)(B) "reference remedial power, not subject-matter jurisdiction").

We review the district court's dismissal of Sikes's complaint de novo, taking the allegations in the complaint as true. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633–34 (11th Cir. 2010).

Adm. Boorda's car.  FOIA generally requires agencies to make their records available to the public upon request, subject to certain exemptions.  *See generally* 5 U.S.C. § 552.  It further gives federal courts power "to enjoin [an] agency from withholding agency records and to order the production of any agency records *improperly withheld.*"  *Id.* § 552(a)(4)(B) (emphasis added); *see GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980).

There is no dispute that the Navy has records responsive to Request 5 and that the Navy did not give such records to Sikes in response to his request.  The only question is whether those records were "improperly withheld" from Sikes, given that the Navy had previously produced the same records to him in response to his Request 2 in 2012.

## A

The Navy argues that, because it had given Sikes the materials from Adm. Boorda's car years earlier, it did not withhold such records from him at all in response to Request 5.  We disagree.

The Supreme Court has explained that, in FOIA, "Congress used the word 'withheld' only in its usual sense."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (internal quotation marks omitted).  When an agency "refuse[s] to grant [a person's] requests for [records] in its files, it [has] undoubtedly 'withheld' [such records] in any reasonable sense of that term."  *Id.*  This is true even if the

8

agency knows the records are otherwise available to the requester. Indeed, an agency has "'withheld' a document under its control when, in denying an otherwise valid request, it directs the requester *to a place outside of the agency* where the document may be" retrieved. *Id.* (emphasis added).

Under this framework, there can be little doubt that the Navy withheld the materials found in Adm. Boorda's car in response to Sikes's Request 5. Sikes explicitly requested such materials, and the Navy acknowledges that it has them. But, instead of giving the records to Sikes, the Navy has essentially told him that he should already have access to them, based on what he had been given in 2012. Still, even if that is true, the Navy itself gave nothing to Sikes in response to Request 5. The Navy's reliance on an outside source (Sikes himself) for the availability of the records does not change the fact that it withheld such records when asked for them.[3]

---

[3] The Navy's contrary argument stems largely from its failure to appreciate that Request 5 was indeed an independent FOIA request rather than an attempt merely to reopen Sikes's Request 2 from years earlier. Even if the Navy produced records in satisfaction of Request 2, it nevertheless withheld such records years later when they were again requested in the standalone Request 5.

We note that the circumstances might be different where an agency finds multiple copies of the same document within the materials responsive to a FOIA request (or batch of simultaneous requests). Thus, we do not mean to suggest that (and we do not decide whether) an agency must necessarily give a requester every redundant copy of the same document when responding to such a request. *See, e.g.*, *Jett v. FBI*, 139 F. Supp. 3d 352, 364–65 (D.D.C. 2015) (agency not required to give duplicate copies of same documents in responding to a FOIA request). This, of course, is quite different from refusing to honor an independent FOIA request simply because it seeks the same materials that were the subject of a different FOIA request years earlier.

B

The Navy further argues that, even if it technically withheld records in response to Request 5, it was justified in doing so because Sikes had been given a copy of the documents once before.  This argument has some commonsense appeal.  Why, after all, should an agency be obliged repeatedly to give the same materials to the same person?  The problem for the Navy, however, is that FOIA itself contains nothing that would allow an agency to withhold records simply because it has previously given them to the requester.

1

FOIA provides that, "upon *any* request for records," the agency "shall make the records promptly available to *any* person," subject to certain enumerated exemptions.  5 U.S.C. § 552(a)(3)(A) (emphasis added).  The Supreme Court has explained that "[a]n agency *must* disclose agency records to any person under § 552(a) *unless* they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Tax Analysts*, 492 U.S. at 150–51 (internal quotation marks omitted) (emphasis added).  Those nine exemptions "are explicitly exclusive," and withheld "agency records which do not fall within one of the exemptions are improperly withheld." *Id.* at 151 (internal quotation marks omitted).  Yet, as the Navy must concede, none of the enumerated exemptions has

10

anything to do with the situation where a person makes a second request for materials he has already received.[4]

The Navy argues that, even without an explicit exemption, an agency may still be excused from fulfilling a FOIA request so long as it acts in good faith and does not "unjustifiably suppress any information to cover [agency] mistakes or irregularities."  Such a "good-faith" catch-all has no basis in the statute and would undermine FOIA's system of narrow and specifically identified exemptions. Indeed, if an agency could simply withhold records for any fair reason, what would be the point of an exhaustive list of enumerated exemptions?  Unsurprisingly, the Navy cites no case in support of such an overarching exemption, and in fact the Supreme Court has rejected other attempts to insert exemptions into FOIA to address an agency's good-faith policy concerns.  *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 581 (2011) (refusing to allow exemption for "records whose release would threaten the Nation's vital interests"); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 15–16 (2001) (refusing to allow exemption for documents whose release would "impair the [agency's] performance of a specific fiduciary obligation to protect the confidentiality of communications with tribes").

---

[4] The exemptions are for matters that are: (1) classified; (2) related solely to internal personnel rules and practices; (3) specifically exempted from disclosure by statute; (4) trade secrets or financial information; (5) privileged; (6) personally private personnel or medical files; (7) various types of law-enforcement records; (8) related to the regulation of banks; or (9) geological information concerning wells.  5 U.S.C. § 552(b).

11

At most, the Navy notes that the Supreme Court has held that FOIA does not require an agency to produce documents that are protected from disclosure by a court injunction, even though the statute mentions no such exemption. *See generally GTE Sylvania, Inc.*, 445 U.S. at 375. But if such were not the case, the agency would face two contradictory legal commands: either violate FOIA or commit contempt of court. The Supreme Court's reluctance to read FOIA to impose mutually exclusive legal obligations on an agency has little to do with our case, and it certainly does not support the imposition of the all-consuming good-faith exemption the Navy now urges. As the Court later explained, *GTE Sylvania* represents a "slight [departure] at best" from "FOIA's self-contained exemption scheme," and it does not invite courts "to engage in balancing, based on public availability and other factors, to determine whether there has been an unjustified denial of information." *Tax Analysts*, 492 U.S. at 155.

Moreover, to allow an agency to deny a FOIA request merely because it seeks records previously received would permit the agency to base its FOIA decision on considerations that the Supreme Court has forbidden. For example, the Navy's proposed rule turns principally on *who* has asked for the records. The Navy does not dispute that it would be obligated to produce the records again if someone other than Sikes requested them. The Navy argues that Sikes's second request may be treated differently only because he also made the first request for

12

such documents.  But the Supreme Court has made clear that "the identity of the requesting party has *no bearing* on the merits of his or her FOIA request."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) (emphasis added); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("As a general rule, if the information is subject to disclosure, it belongs to *all*."  (emphasis added)).  Likewise, the Navy's approach may require the agency to consider the outside availability of the records to the requester.  Indeed, the Navy suggests that a duplicate request might be honored if the requester needed to replace documents that had been lost or destroyed since he first received them.  But, once again, the Supreme Court has rejected the notion that an agency may base its response to a FOIA request on the requester's perceived ability to retrieve the records from other sources.  *See Tax Analysts*, 492 U.S. at 150, 155.

In sum, the Navy has asked us to "read into the FOIA a disclosure exemption that Congress did not itself provide," *id.* at 154, and which would require an agency to consider factors the Supreme Court has held are off-limits in the FOIA context.  We decline to do so.[5]

---

[5] We also reject the Navy's suggestion that an exception for repeated requests is necessary to prevent agencies from being harassed by vexatious requests.  Even if we could inject an exemption into FOIA that the statute itself does not recognize, the Navy has failed to demonstrate what is uniquely burdensome about the situation it posits.  If someone wanted to bother an agency through FOIA, the easiest way would seemingly be to file a succession of requests for different material (which we would expect to be far more cumbersome as each

C

Finally, we reject the Navy's argument that Sikes's claim is precluded by the parties' prior litigation regarding Request 2.  Specifically, the Navy argues that the sufficiency of the Navy's response to Sikes's identical Request 2 was already conclusively determined in *Sikes I* and therefore cannot be re-litigated now.  *See generally In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (discussing claim preclusion).  The Navy is wrong, however, that Sikes's claim regarding Request 5 has anything to do with such determination.

In *Sikes I*, the court determined that the eleven pages of records the Navy gave Sikes in 2012 fully satisfied his Request 2.  Sikes therefore may be precluded from later arguing that such documents were *not* a complete response to Request 2.  And thus, if the Navy had responded to Sikes's identical Request 5 by giving him those same eleven pages, Sikes might be barred from arguing that the Navy should have given him anything more.  *See Martin v. U.S. Dep't of Justice*, 488 F.3d 446,

would require the agency to conduct a new search, collection, and review of information).  Yet, the Navy does not suggest that FOIA somehow limits the number of different requests any individual can make; it is unclear why the statute must therefore limit the number of similar requests the individual can make.

Moreover, FOIA already contains safeguards against the sort of vexatious conduct the Navy describes, including the ability to charge requesters various fees for the cost of responding to their requests, 5 U.S.C. § 552(a)(4)(A), and the ability to place frequently requested records in an online FOIA library where later requests can be directed, *see generally id.* § 552(a)(2).  If the Navy has a complaint about the effectiveness of these measures or the potential to abuse the substantive right Congress created, it ought to be directed to Congress itself.  *See Milner*, 562 U.S. at 581 ("[T]he Government may of course seek relief from Congress.  All we hold today is that Congress has not enacted the FOIA exemption the Government desires.  We leave to Congress, as is appropriate, the question whether it should do so." (citation omitted)).

14

453–55 (D.C. Cir. 2007) (requester precluded from re-litigating validity of identical redactions made in response to duplicate FOIA request).

But that is not what happened. Request 5 is an independent—albeit duplicate—request, and the Navy gave Sikes *no* records in response to it. This failure to provide any records at all is what Sikes argues violated FOIA. He does not argue that the Navy must now give him something more than what he received in 2012—in fact those same documents are exactly what he seeks. His goal is to see whether the Navy will produce that same material now, not to challenge its sufficiency if the Navy does so.

Because Sikes's claim does not challenge the adequacy of the Navy's production in response to Request 2, *Sikes I*'s determination of that issue is beside the point. *Sikes I* did not consider the question presented here and nothing in such case precludes Sikes's claim.[6]

III

Sikes also argues that the district court erred in dismissing his claim that, in response to Request 10, the Navy improperly withheld Adm. Boorda's suicide note to his wife. The Navy defended its decision to withhold the note under FOIA's

---

[6] For these same reasons, Sikes's claim is not moot simply because the Navy satisfied his Request 2 in 2012. Once again, Request 5 is an independent request. His claim might be moot if the Navy indeed produced the requested material in satisfaction of that new request. *See Chilivis v. SEC*, 673 F.2d 1205, 1209–10 (11th Cir. 1982) (FOIA lawsuit becomes moot once agency voluntarily provides requested records).

privacy exemptions 6 and 7(C).  Sikes alleges that such withholding was improper because any privacy interests in the note might be outweighed by the public interest in its disclosure—an argument the district court failed to address at all. Sikes asks that the case be remanded so that the district court can consider such argument in the first instance, and only after it reviews the contents of the withheld note in camera.[7]

## A

There is no doubt that the district court erred in failing to consider Sikes's argument that the Navy cannot withhold the note pursuant to FOIA's privacy exemptions.  It is the Navy's burden to justify its decision to withhold the note on the basis of the asserted FOIA exemptions, and the district court therefore had an obligation to determine whether the claimed exemptions apply.  *See Stephenson v. IRS*, 629 F.2d 1140, 1144 (5th Cir. 1980).  Indeed, even the Navy does not defend the district court's failure to address such argument.

The Navy argues that we may nevertheless affirm the dismissal of Sikes's claim because the district court's error was harmless.  That is, the Navy argues that there is no need to remand the case to the district court to consider Sikes's argument about the privacy exemptions, because it is clear that, as a matter of law, such exemptions do apply.  As explained below, we agree.

---

[7] On appeal, Sikes has abandoned his claim that the suicide note cannot be withheld because the Navy previously released a blurry photo of the note.

16

B

The Navy argues that the suicide note is excused from disclosure under FOIA Exemption 7(C),[8] which covers "records or information compiled for law enforcement purposes"[9] if their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); *see Favish*, 541 U.S. at 160.  The Supreme Court has held that such exemption protects the personal privacy of both the person to whom the information pertains as well as his family—including specifically the privacy of surviving family members who would object to the disclosure of "details surrounding their relative's death."  *Id.* at 171.  We must balance the relevant privacy interests against the public interest in disclosure.  *Id.*  The "only relevant public interest . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government."  *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal quotation marks, alteration, and emphasis omitted).

---

[8]  On appeal, the Navy does not argue that the withholding was justified under FOIA Exemption 6, a separate privacy protection which is generally less protective than 7(C).  *See Reporters Comm.*, 489 U.S. at 756.

[9]  Sikes does not dispute that the Navy collected (and retains) the suicide note in its investigation "for law enforcement purposes."

17

1

The privacy interests in the withheld note are unquestionably strong. In *National Archives & Records Administration v. Favish*, the Supreme Court upheld the withholding of photographs of the scene of former White House lawyer Vincent Foster's suicide. *See generally* 541 U.S. at 164–76. In doing so, the Supreme Court recognized the "weighty privacy interests" of family members seeking to preserve their private memories of a deceased loved one and to "secure their own refuge from a sensation-seeking culture for their own peace of mind and tranquility." *Id.* at 166–67, 171. The same interests apply here and to an even greater degree. Indeed, the requested suicide note would intrude not only into the memory of a deceased loved one, but more specifically into the intimate and private relationship between Sikes and his wife. The note would reveal the deeply personal sentiments Sikes chose to share with his wife in the last moments of his life—quite likely to be a window into his most sincere reflections on their relationship together. As the Navy puts it, Adm. Boorda and his wife "have the strongest personal-privacy interest" in such matters. *See also U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (Exemption 6 protects "highly personal information regarding marital and employment status, children, [and] living conditions"); *Reporters Comm.*, 489 U.S. at 769 (Exemption 7(C) recognizes "the privacy

18

interest in keeping personal facts away from the public eye"). Understandably, Sikes does not seriously dispute this characterization.[10]

2

Such significant privacy interests "should yield only where exceptional [public] interests militate in favor of disclosure." *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 350 (D.C. Cir. 2017) (internal quotation marks omitted). But the public interest in disclosure that Sikes asserts is scant in comparison.

In his complaint, Sikes alleged that he believed the note may reveal that Adm. Boorda had an extramarital affair and was under significant pressure in light of the military's criminalization of adultery. The complaint alleged that, if true, such information might contribute to public reconsideration of the military's penalties for infidelity. But, even if Sikes's speculation is correct, reflection on one personal consequence of the military's publicly known policy on adultery— while perhaps of some general "public interest"—would touch only tangentially upon the only interest that matters for FOIA purposes: contributing to the public's understanding of the *operations or activities* of the government. *See Reporters Comm.*, 489 U.S. at 775. Moreover, even if Sikes's speculation that Adm. Boorda

___

[10] At most, Sikes suggests in passing that these significant privacy interests have "attenuated over the twenty-plus years since Admiral Boorda's suicide." But the mere passage of time—or perhaps even death—without more "does not materially diminish these interests." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003); *see Accuracy in Media, Inc. v. Nat'l Park Serv.*, 194 F.3d 120, 123 (D.C. Cir. 1999).

had an extramarital affair were true, revelation of such information would only increase his family members' privacy interests in the note even higher.

On appeal, Sikes more broadly speculates that public interest would be served because "the note may have revealed pressures Admiral Boorda faced as a naval officer," without any further elaboration.  Even if true, a glimpse into the general level of pressure that came with Adm. Boorda's job would not "contribut[e] significantly to public understanding of the operations or activities" of the Navy.  *Fed. Labor Relations Auth.*, 510 U.S. at 495 (internal quotation marks and emphasis omitted).  This is especially so in light of the fact that the Navy *has* publicly disclosed the separate suicide note that Adm. Boorda addressed to his sailors.  That note did touch on certain pressures of Adm. Boorda's position and revealed that Adm. Boorda couldn't "bear to bring dishonor" to his sailors based on accusations that he had worn two combat ribbons that he had not earned. Whatever amount the additional note might contribute to the understanding of such issues likely pales in comparison to the degree to which the note would invade the Boordas' privacy.

Sikes's only other argument is that "it is possible that the suicide note contains statements that are of great public importance and that do not disclose sensitive personal information."  He argues, therefore, that the court should not rule in the Navy's favor without at least first inspecting the note in camera to

20

weigh its actual content. But this blanket assertion proves too much. Certainly, it is *possible* that the note contains information of significant public importance; perhaps it is not that personal after all. But the same could be said of any governmental record until one has seen its contents. Under Sikes's argument, then, essentially every record that is alleged to have been improperly withheld under FOIA's privacy exemptions should be reviewed in camera. Yet, in camera inspection is not required under FOIA, and thus Sikes must point to something specific about the document in question that would entitle him to such review. *See Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993).

3

Without question, the district court should have considered Sikes's argument regarding the applicability of the asserted privacy exemptions in the first instance. Indeed, usually, "FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified" and after the government has supplied affidavits or other information describing the documents. *Id.* at 369. Yet, even without further development of the record, there is no dispute over the general nature of the document at issue here: a suicide note written privately from a husband to his wife and left at the home they shared together. We are confident that such document is properly subject to protection under exemption 7(C). *Cf. Reporters Comm.*, 489 U.S. at 776 (some documents, by their nature,

21

"fit[] into a genus in which the [privacy] balance characteristically tips in one direction").

Even without further information on the exact details of its contents, the suicide note from Adm. Boorda to his wife is the type of document whose disclosure can "reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); *see also Reporters Comm.*, 489 U.S. at 777 n.22 (emphasizing that exemption 7(C) applies based on the *reasonable expectation* that a disclosure would unduly invade personal privacy rather than on a showing that the disclosure *in fact* would do so).  There is nothing to indicate that the note was in any sense a product of the Navy or of Adm. Boorda's official duties, especially in light of the fact that Adm. Boorda left a separate suicide note to those under his official command, which has been made available to the public. Indeed, the only reason the Navy even *has* the note is because it was found at Adm. Boorda's home by Naval investigators.  Thus, although it is held within the Navy's files, there is no reason to expect the note to be anything other than an intimate message written from husband to wife.  Those individuals do not forfeit their significant privacy interests in such a note merely because one of them held an important government position at the time.  *See generally Judicial Watch*, 876 F.3d at 349–51 (draft indictment of Hillary Clinton protected under exemption 7(C)); *cf. Reporters Committee*, 489 U.S. at 774 ("FOIA's central purpose is to

ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government is so disclosed.").

Thus, even if we cannot completely rule out the *possibility* that the suicide note might reveal something of public importance, every indication is that a note of this type is of a predominantly—and inescapably—personal nature.  In these circumstances, we need not remand to the district court to have it view the note in order to reject Sikes's unfounded speculation about its value to the public.  Sikes has not stated a plausible claim that the Navy's withholding of it under FOIA exemption 7(C) was improper.

IV

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part.  The case is **REMANDED** for further proceedings.